EDWARD J. HUGHES

*v.*

FRANK G. NOYES *et al.*

*Opinion filed February 14, 1898.*

171    575
97a   2648
f97a   4649

171    575
196  10  31
196  11  33

171    575
199   1220

1. EQUITY—*bill in aid of execution may be filed as soon as complainant obtains judgment.* A bill to remove an alleged fraudulent conveyance out of the way of an execution may be filed as soon as the complainant obtains judgment, and before he has attempted to satisfy it out of the defendant's other property.

2. SAME—*proof of defendant's insolvency is not necessary to equitable jurisdiction in aid of execution.* Proof of the defendant's insolvency is not necessary to give a court of equity jurisdiction to remove an alleged fraudulent conveyance out of the way of an execution.

3. FRAUD—*statutory provisions concerning conveyances in fraud of creditors.* Under sections 4 and 5 of the Conveyance act (Rev. Stat. 1874, p. 540,) every gift, grant, conveyance, etc., of or charge upon property, made with intent to disturb, hinder, delay or defraud creditors or other persons, is void as against such creditors, purchasers or other persons; but the title of a purchaser for value is not affected, in the absence of notice of the fraud.

4. SAME—*modes of ascertaining fraudulent intent in the conveyance of property.* Intent to defraud creditors by the conveyance of property may be ascertained by inference, from circumstances, as a conclusive presumption of law, or as a *prima facie* presumption of law, or as an argumentative conclusion of fact, according to the facts and circumstances in each case.

5. SAME—*when conveyance is for valuable consideration, proof of fraudulent intent must be clear.* Where a conveyance alleged to be in fraud of creditors is made for a valuable consideration, the fraudulent intent must be proved by evidence sufficient to establish the fact without the aid of legal presumptions.

6. SAME—*when conveyance is voluntary, fraudulent intent may be inferred.* Where a conveyance alleged to be in fraud of creditors is voluntary, the fraudulent intent may be inferred from proof of circumstances, such as the grantor's insolvency, great indebtedness, or the like; but it is not necessary to show complete insolvency.

7. EVIDENCE—*what sufficient to show valuable consideration.* Uncontradicted evidence that a married woman conveyed her separate property to her son at a reasonable price; that the son paid part cash, assumed a mortgage and gave his note for the balance of the purchase price, which was afterward sold for nearly its face value, and that he paid the interest and part of the principal on the mortgage indebtedness, is sufficient to show valuable consideration.

8. SAME—*when verbal admissions are not controlling.* Alleged verbal admissions of a party that he did not own the farm upon which he resided are entitled to little weight, where, at the time they were made, the party had in his possession a deed to the property,— particularly where the party seeking advantage from them seeks to connect the party making them with an alleged conspiracy to defraud the grantor's creditors by conveying the farm.

9. CONVEYANCES—*when conveyance from mother to son will not be set aside.* A conveyance of her separate property by a woman to her son, for a valuable consideration, about a month prior to the failure in business of her husband, on whose note the mother was surety, will not be set aside in equity in aid of an execution issued on a judgment on such note, in the absence of proof of the wife's fraudulent intent, or of the son's knowledge either of such intent or of the business relations of his father and mother.

10. HUSBAND AND WIFE—*mere fact of wife's loaning money to husband is not sufficient as against creditors.* A wife may loan her separate property to her husband and take security which will be binding against creditors; but the mere fact of her letting him have money is not sufficient, where no contractual relation is shown.

11. SAME—*as against creditors, mere delivery of money by wife to husband does not imply a promise to repay.* As against creditors the law does not imply, from the mere delivery of money by the wife to the husband, a promise of repayment, but requires either proof of an express promise or of circumstances showing that they dealt with each other as debtor and creditor.

*Hughes* v. *Noyes,* 71 Ill. App. 212, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Clark county; the Hon. F. BOOKWALTER, Judge, presiding.

GRAHAM & TIBBS, for appellant:

Where a debtor sells property with intent to hinder, delay or defraud his creditors, notice to the purchaser of the debtor's intent is *per se* evidence of *mala fides*, and renders the sale void without reference to the purchaser's actual intent, the debtor's fraudulent motives being imputed to the purchaser. *Hanchett* v. *Goetz,* 25 Ill. App. 445.

Where a sale is made by a failing debtor, and it appears from the transaction that it was designed that the vendor should retain a secret use in the property, it must

be condemned as fraudulent and void as to his creditors. *Power* v. *Alston*, 93 Ill. 587.

Where an embarrassed debtor alienates all his property it creates a presumption of dishonesty and fraud, and where questions of relationship intervene it becomes important to inquire strictly into the motives. Wait on Fraud. Con. sec. 231.

An unusual degree of secrecy observed between the parties in the making of the sale is a badge of fraud. Circumstances indicative of concealment are evidence of fraud, and secrecy connected with other facts is a circumstance from which fraud may be inferred. Wait on Fraud. Con. sec. 234.

ROBERT E. HAMILL, for appellees:

Statements by a grantor after the execution and delivery of a deed are not competent to impeach the grantee's title. *Milling* v. *Hillenbrand*, 56 Ill. App. 306; *Bennett* v. *Stout*, 98 Ill. 47.

In order to impeach a conveyance of land for fraud, both grantor and grantee must be shown to have intended to commit the fraud as against creditors of the grantor. Fraud against creditors in a conveyance of the debtor's property cannot be presumed, but must be proved. *Hatch* v. *Jordan*, 74 Ill. 414.

Although a conveyance of land is made to defraud the grantor's creditors, an innocent purchaser for a sufficient consideration, without notice of the fraud, will be protected; and the fact the land sold is worth more than the price given will not render the transaction fraudulent as to the purchaser. *Zick* v. *Guebert*, 142 Ill. 154.

Before a sale of property, as against the purchaser, can be pronounced void on the ground of fraud, it must appear that he participated in, or at least had notice of, the fraud at the time he purchased, and in the absence of such proof evidence of the fraud by the seller alone is wholly immaterial. *Mathews* v. *Reinhardt*, 149 Ill. 635.

Per CURIAM: A proceeding in equity, in the nature of a creditor's bill, was begun in Clark county, by appellant, to set aside an alleged fraudulent conveyance of real estate, being the separate property of Reuhamia Noyes, made by her and Gilman Noyes, her husband, to their son, Frank G. Noyes, all of whom were made defendants to the bill, and to subject said property to the payment of a certain judgment obtained by appellant against Gilman and Reuhamia Noyes. The evidence was taken before the master, who reported it to the court, with his findings, in favor of complainant, but the chancellor set aside the findings and entered a decree in favor of the defendants. The Appellate Court having affirmed that decree, this appeal is prosecuted.

The appellant's judgment against Gilman and Reuhamia Noyes was entered on November 21, 1893, in vacation, by virtue of a power of attorney to confess judgment, contained in certain promissory notes executed by Reuhamia and Gilman Noyes. It was urged by the defendants in their answer and on the hearing, and it is insisted here, that the judgment was irregularly obtained, and therefore void, and that the notes upon which it was entered were obtained by duress and fraud as to Reuhamia Noyes. Neither of these contentions is sustained by the evidence, in our opinion, nor is it sufficient to justify us in opening up the judgment in order that the question of fraud and duress may be submitted to a jury.

We have often held that where a party seeks to remove a fraudulent conveyance or encumbrance out of the way of his execution, he may file his bill for that purpose as soon as he has obtained his judgment and before he has made any effort to satisfy it out of other property of the creditor. (*Weightman* v. *Hatch,* 17 Ill. 281,—citing *Miller* v. *Davidson,* 3 Gilm 518. See, also, *Newman* v. *Willetts,* 52 Ill. 98, *Bennett* v. *Stout,* 98 id. 47, and many later cases.) Under these decisions it was unnecessary for appellant

. . .

to prove the insolvency of appellees in order to give the court jurisdiction of the case made by his bill.

Briefly, the theory of appellant is, that he, as a mere friend of the Noyes family, went security for them to start a grocery store, having confidence in them and believing they had ample property to protect him against loss; that as a result, in less than a year he had become liable for them to the extent of about $1200, for which amount he insisted upon, and did receive, their notes; that this was in January, 1893; that on November 21, following, Gilman Noyes, finding himself about to fail in business, gave his wife his promissory note for $1200, upon which she immediately took judgment and had execution issued and levied on the stock of groceries then on hand; that on the same day appellant took judgment on his notes; that two days thereafter Frank G. Noyes filed a deed to the property in dispute from Reuhamia Noyes to himself, which was dated October 18, 1893; that some time before the failure, on November 21, 1893, Gilman Noyes, finding that failure was inevitable, fraudulently procured all the merchandise he could get on his credit, without expecting to pay for it; that the note given to his wife was without consideration, fraudulent, and void as to creditors; that Frank G. Noyes took said deed in contemplation of such insolvency, without consideration, and for the purpose of hindering, delaying and defrauding the creditors of Reuhamia Noyes.

Appellees' contention is, that at the solicitation of the appellant, Gilman Noyes, with appellant as a silent partner and furnishing the credit, went into the grocery business; that in January, 1893, they dissolved partnership, appellant retiring from the business, and in settlement with him the notes upon which he took judgment were given; that between January, 1893, and November 21, 1893, Reuhamia Noyes loaned her husband, at various times, certain sums of money, amounting in all to $800; that Gilman Noyes had also owed his wife $400 for sev-

eral years previous to this time; that on November 16, 1893, in settlement of said sums, he gave her his note for $1200, upon which she, on the 21st day of November, 1893, took judgment, issued execution and levied upon the merchandise in the grocery store of Gilman Noyes; that Reuhamia Noyes was, on the 18th day of October, 1893, the owner of seventy-three acres of land which she had acquired by inheritance; that she on said day sold and conveyed the same to her son, Frank G. Noyes, for and in consideration of $1203; and that the same was a *bona fide* transaction.

The principles of equity which enter into this case are defined and regulated by chapter 59 of the Revised Statutes, as follows:

"Sec. 4. Every gift, grant, conveyance, assignment or transfer of or charge upon any estate, real or personal, or right or thing in action, or any rent or profit thereof, made with intent to disturb, delay, hinder or defraud creditors or other persons, and every bond or other evidence of debt given, suit commenced, decree or judgment suffered, with like intent, shall be void as against such creditors, purchasers and other persons.

"Sec. 5. The foregoing section shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice of the fraudulent intent of his immediate grantor, or of the fraud rendering void the title of such grantor."

There are three modes of ascertaining the fraudulent intent quoted in the statute above: (1) It may be inferred from the circumstances, as a conclusive presumption of law; (2) as a *prima facie* or rebuttable presumption of law; (3) as an argumentative conclusion of fact. It is said in Pomeroy's Equity Jurisprudence (vol. 2, par. 971): "In the first place, where a conveyance is made upon a valuable consideration, and is alleged to be fraudulent against the grantor's creditors, an actual and express intent to hinder, delay or defraud is necessary to be proved.

\* \* \* In other words, the actual and express fraudulent intent must be proved by evidence tending to show its existence, and from which it legitimately results as a conclusion of fact drawn by a court or jury, without the aid of any legal presumptions. In the second place, where a conveyance is voluntary and is alleged to be fraudulent as against existing creditors, while an express actual intent to defraud may be present it is not necessary. The fraudulent intent which will avoid the conveyance as against existing creditors may be inferred from circumstances connected with the transaction, such as the grantor's insolvency, great indebtedness compared with the amount of his property, and the like. Complete insolvency, however, is clearly not a requisite."

The first question which naturally presents itself in this case, under these rules, is, was the deed from Reuhamia Noyes to Frank G. Noyes made upon a valuable consideration. This subject was gone into at great length on the trial. It was shown by appellees that the consideration paid consisted of $250 cash, $470 assumed on a mortgage which Reuhamia Noyes was bound to pay and which was released to her as a part of the consideration for this property, $53 for work previously done, and $30 for a barn built by Frank G. for Reuhamia at her request; also, the note of Frank G. to her for $400 at the date of the deed, making in all $1203. It was shown that Frank G. Noyes, at some time after the conveyance was made, paid $100 and interest on the assumed mortgage, and one Romines, whose evidence appears by the record to be disinterested and reliable, testified that he purchased the $400 note above mentioned from Reuhamia Noyes for $375. There is no direct evidence in the record to impeach the foregoing facts as to the consideration paid for the land by Frank G. Noyes to his mother. The assessment of the county assessor, showing that Frank G. Noyes listed his personal property for that year, and for several years previous, at but a little over $100, in no

proper sense tends to disprove that fact. Considerable evidence was introduced on either side to show the value of the land, and we are satisfied that the weight of the testimony is that the consideration paid was a reasonable price therefor.

From what has been said, it follows that appellant could only maintain his bill by proving that Reuhamia Noyes made the conveyance with actual intent to defraud her creditors, and that the transaction on the part of Frank G. Noyes was made with notice of such intent. Much of the evidence goes to show the fraudulent character of the judgment obtained by Reuhamia Noyes against Gilman Noyes, the object, no doubt, being to show a conspiracy between Reuhamia, Gilman and Frank G. Noyes to defraud the creditors of the former two. Reuhamia Noyes testified that she had loaned Gilman Noyes $400 long prior to starting the grocery store; that after the settlement with the appellant, on January 24, 1893, and before November 16, 1893, she loaned him $800; that she did not know the dates when these various sums were given to him,—only kept a "kind of a memorandum;" that the money she loaned him she had derived from the sale of property, etc., before and after she had moved to town; that she got $500 or $600 after she came to town; that she got $250 from Frank G. Noyes the day she delivered him the deed, October 21, 1893; that she also sold the note Frank G. Noyes gave her, after October 21, 1893, to Roy Romines for $375. The trouble with this transaction is the uncertainty that pervades the matter. She only kept a "kind of a memorandum" of the amounts advanced, and neither Gilman Noyes nor Reuhamia Noyes can tell anything about the time or the amounts paid on this loan to Gilman Noyes, except Gilman says he remembers of $60 in April and $55 in the summer, while Reuhamia Noyes testified that she did not think she gave him any of it in the spring. We think it may safely be assumed that this evidence fails to show an indebtedness

against Gilman Noyes and in favor of Reuhamia Noyes, which, under the cirumstances, could stand against the rights of the creditors of Gilman.

The law is well settled that a wife may loan her separate property to her husband, and he can give her security, which will be binding against both prior and subsequent creditors; but the law is equally well established that the mere fact of the wife letting the husband have her money to use is not sufficient as against other creditors. The actual contractual relations must appear by satisfactory evidence. (*Iseninger* v. *Criswell*, 67 N. W. Rep. 290; *Ronans* v. *Maddow*, 77 Iowa, 206.) When the rights of creditors are involved, the law will not, from mere delivery by her of money to him, imply a promise to repay her, but will require more,—either an express promise, or circumstances to prove that in such matter the husband and wife dealt with each other as debtor and creditor. (*Steadman* v. *Wilbur*, 7 R. I. 481.) "A claim by a wife against a husband, first put in writing when his liabilities begin to jeopardize his future, should always be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected at once, unless their statements are so full and convincing as to make the fairness and justness of the claim manifest." *Clark* v. *Rosenbraus*, 31 N. J. Eq. 667.

But, notwithstanding the notes given November 16, 1893, by Gilman Noyes to his wife, and the judgment obtained on them, were void as to creditors of Gilman, the evidence fails to show an actual intent at that time in Reuhamia Noyes to defraud such creditors. The question here is, whether there was such actual intent on her part existing on October 18, 1893,—the date of the deed, —to hinder, delay or defraud her creditors. The evidence showed that the only debts she owed, except those due her son, Frank G., were the notes to appellant, neither of which was then due, and upon which she was merely

surety for her husband.  There is a great deal of evidence in the record tending to show that Reuhamia Noyes was closely connected with the management of the store from its inception, and was acquainted with the manner in which the business was conducted, knowing whether it was profitable or otherwise; but we are unable to see wherein that evidence can affect the rights of Frank G. Noyes, there being no proof whatever that he was in any way connected with the business or had knowledge even of the manner in which it was conducted.  After his parents moved to town he lived on the farm in dispute, some distance in the country.  He was a tenant there until October 21, 1893, when the deed from his mother, executed three days before, was delivered to him.  He testified that he went to the recorder's office on Saturday, in the afternoon, towards evening of the day he got his deed, but seeing through the glass in the door that no one was there he did not attempt to go in but went away, and did not record the deed until November 23, 1893.  Four witnesses testify to remarks made by him after the alleged delivery of the deed to him, to the effect that he was not the owner of the land.  One Saunders, living near him, says he went to him where he was at work on a hay-stack, in the fall of 1893, and proposed to trade ends of a partition fence, and "he told me he would have to see the authorities; that it was Ross' (a brother,) and he would see the folks and let me know, and see me about it again."  Frank G. Noyes admitted that Saunders came to him to trade ends of the fence and asked him if he was the right one to come to, and he told him he was, and they traded that morning.  While Saunders was not certain when this conversation took place, Noyes says that it took place after the deed was delivered to him, on October 21, 1893.  Isaac Baker worked for Frank G. Noyes in the fall of 1893.  He says: "We were talking. He was talking about building there on the Ashby land. I said it would be a good thing, as all improvements

would be your own.　He said it was nothing to him to improve the other, (meaning the property in dispute,) as he had his due out of the home place,—that the home place was for Ross." This talk seems to have been in the last of October or the first of November, 1893.　Frank G. Noyes denied the conversation *in toto*,—said he thought Baker had worked there in the fore part of October. William Kitchen testified to a conversation in December, . 1893, in which Frank said "all he owned was one piece of land he bought of Wesley Ennis." Frank denies that there was such a conversation at that date, but admits a conversation with Kitchen long prior thereto.　Hannah C. Kitchen rode in a wagon with Frank G. Noyes and his mother in the spring of 1894.　She testified that at that time "I asked Mrs. Noyes if she had sold her farm or was going to move back on it, or had deeded it to Ross.　She told me no,—she had not sold it or deeded it to any one, and she did not intend to as long as she lived." Frank G. Noyes and his mother agree that the question asked was whether she was going to move back on the place, and she answered that she had no place to move back on.　The deed had then been on record several months.　One Perisho was employed by appellant to go to Frank G. Noyes in the spring of 1894 to try to get evidence for him in this suit.　The only information he obtained was the fact that Frank G. Noyes claimed to own the property and had not paid for it all.　D. J. Davidson, a real estate agent and notary public, testified that he drew the deed in question on the 18th day of October, 1893, and that there were no unusual circumstances connected with it in any way.　There was no evidence to the contrary.　It is not disputed that Frank G. Noyes was in possession of the premises prior to and from the time the deed is claimed to have been delivered to him.

As we have said, the evidence fails to show knowledge by Frank G. Noyes of the condition of affairs in the grocery business at the date and delivery of his deed,

which was a month prior to the failure, or to in any manner connect him with the transaction of the parents. The evidence of the witnesses going to show that he did not claim to own the farm between the date of the deed and the failure is of such a character that the witnesses could easily be mistaken, either as to what was said or the date of the conversation. It is said by Greenleaf (vol. 1, sec. 200): "With respect to all verbal admissions it may be observed that they ought to be received with great caution. The evidence, consisting, as it does, in the mere repetition of oral statements, is subject to much imperfection and mistake, the party himself either being misinformed, or not having clearly expressed his own mind, or the witness having misunderstood him. It frequently happens that the witness, by unintentionally altering a few of the expressions orally used, gives an effect to the statement completely at variance with what the party actually did say,"—citing numerous authorities. "But where the admission is deliberately made and precisely identified, the evidence it affords is often of the most satisfactory nature." At the time of these conversations, as fixed by the witnesses, Frank G. Noyes must have received the deed in question, if it was not already on record, and it is scarcely reasonable that he should have, in the face of that fact, intentionally declared he had no title to the land. This would be especially true if he was a party to a scheme to hinder and delay the creditors of his mother.

We have given the evidence in this case the fullest care and consideration, and while we are not prepared to say the cause is free from doubt, in view of the family relations existing between the parties, yet we are unable to say, under the rules of law applicable, that the decree of the circuit court was not authorized. The judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BOGGS took no part in this decision.