## Columbus B. Hauk et al. v. Edward H. Van Ingen et al.

1. HUSBAND AND WIFE—*Effect of the Wife Permitting Her Funds to Remain in the Hands of Her Husband for a Long Series of Years.*—A wife having permitted her funds to remain in the hands of her husband for a long series of years, under the circumstances and conditions as shown in this case, should be precluded from making any claim to them as against the claims of the creditors of her husband.

2. SAME—*Where the Wife for a Long Series of Years Permits Her Husband to Hold the Title of Her Lands.*—Where a wife has permitted her husband for a long series of years to take and hold the title to her lands and to hold himself out to the world in a general way as the owner of the same, and there is a reasonable presumption that his creditors have to some extent acted upon the faith of such ownership in extending credit to him, the wife should not be permitted at the last moment to withdraw such property from the use of his creditors.

3. FRAUDULENT CONVEYANCE—*What is, as to Creditors.*—Where a party makes a conveyance of his property for the purpose of hindering, delaying or defrauding his creditors, such conveyance is fraudulent and void as to such creditors.

4. SAME—*What is Not, Ipso Facto, from a Husband to His Wife.*—Where a husband who is largely indebted makes a voluntary conveyance to his wife, but does not make it with any intention of hindering, delaying or defrauding his creditors or other persons, such conveyance is not *ipso facto* fraudulent and void, but the question, upon an application by his creditors to set aside such conveyance, is, was the conveyance, considering the pecuniary circumstances and condition of the husband, a reasonable and proper one for him to make, and if it was not, it will at the instance of the creditors defrauded be set aside, although the hus-

Hauk v. Van Ingen.

band in making it may have honestly believed that it was, as regarded his wife and creditors, a right and proper thing for him to do.

5. SAME—*When a Man is Mistaken as to His Pecuniary Circumstances.*—A man may be honestly mistaken as to his pecuniary circumstances and think himself worth more than he really is; and if it turns out that he was mistaken and a conveyance made by him is unreasonable, and, as regards his creditors, unjust, it will be set aside upon their application.

6. MARRIED WOMAN—*Effect of Allowing Her Property to Stand upon the Records in Her Husband's Name.*—Where a married woman allows her property to stand upon the records in the name of her husband, and upon the strength of his apparent ownership he obtains credit and purchases goods from the complainants, it is neither just nor equitable that his wife should be permitted to assert that the property, all the time it so appeared of record in his name, in fact belonged to her.

7. SAME—*Claims Against Their Husbands.*—A claim by a wife against her husband, asserted for the first time when his liabilities begin to jeopardize his future prospects, should be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected, unless their statements are so full and convincing as to make the fairness and justness of the claim manifest.

8. EVIDENCE—*Of the Parties as to Good Faith of Conveyances Between Husband and Wife.*—The testimony of the parties to a conveyance between a husband and wife, that it was made in good faith and that there was no fraudulent intention in making it, can not prevail against facts which satisfactorily show that it was fraudulent as to creditors.

Creditor's Bill.—Appeal from the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed November 1, 1901.

WILLIAM W. GURLEY and HORACE G. STONE, attorneys for appellants.

F. W. BECKER, attorney for appellees.

MR. JUSTICE WATERMAN delivered the opinion of the court.

This was a creditor's bill based upon a judgment for $2,254.90 recovered by the complainants against Columbus B. Hauk. The bill having been answered the cause was referred to a master to take testimony and report. The master in his report, from the evidence, finds that Joanna N. Hauk acquired, in 1858, by the will of her father, two

lots in George street, Cincinnati, Ohio; that these lots were sold, one in 1864 and the other in 1865, for a total sum of $6,400; that this sum, together with about $11,600 belonging to Columbus B. Hauk, was invested in the purchase of a farm at South Charleston, Ohio, the title being taken in the name of Columbus B. Hauk; that this farm was sold in 1872 for $25,000, and from this sum the Dial & Hauk Block in Springfield, Ohio, was purchased for $15,000, Mrs. Hauk furnishing such portion of the proceeds of the sale of the South Charleston farm as belonged to her, and Columbus B. Hauk supplying the balance, the title being taken in the name of Columbus B. Hauk. This block was sold in 1882 for $21,000; Mrs. Hauk's share of the same was invested in notes and mortgages until November 9, 1899, when the Washington avenue property was purchased for $4,000, and the year following the house thereon was built at an expense of $6,000, making the total cost of the lot and house $10,000; that the aforesaid transactions, at the time of their consummation, were the subject of numerous discussions between Hauk and his wife and she was consulted and agreed to the various sales of her property, and that the various investments and purchases should be made with her money.

The master further finds that the title to the Washington avenue property was taken in the name of Columbus B. Hauk, and that on January 13, 1891, he conveyed the same to Joanna N. Hauk, his wife, three days before the indebtedness on which the complainant's judgment was obtained became due, and that on April 17, 1891, Columbus B. Hauk made an assignment for the benefit of his creditors, · upon the advice of his son.

The master further finds that Mr. Hauk owed at least $21,000 at the time he made the conveyance of the Washington avenue property to his wife, and that the entire amount realized from his estate, so far as shown by the evidence in this case, was but $9,100, and that the debt due to the complainants in this case is still unpaid.

The master further finds that Columbus B. Hauk formed

a partnership with one Weimer and one Bruce, March 1, 1883, for carrying on a general clothing business at Springfield, Ohio; that Weimer's interest was purchased by Bruce and Hauk, in 1884, and the firm was thereafter known as Bruce, Hauk & Co.; that this firm began purchasing goods from complainants soon after its organization; that Harry S. Hauk, a son of Columbus B. Hauk, was in the employ of the firm of Bruce, Hauk & Co., and represented his father's interest; that July 1, 1887, Harry S. Hauk sent a statement which was intended to show the financial condition of Bruce, Hauk & Co. at that time, and which sets forth that Columbus B. Hauk was the owner of real estate to the amount of $30,000, and had money loaned on first mortgages to the amount of $15,000; that on February 25, 1890, Harry S. Hauk wrote a letter in the name of Bruce, Hauk & Co., to the complainants, stating that the assets of the firm were just the same, if anything, better, as his father had made about $2,000 on real estate the year before.

The master further finds that the goods bought from complainants for which the judgment was entered were purchased between July 5 and November 13, 1900, and that payment therefor was due January 16, 1891; that Joanna N. Hauk knew that her husband was in the clothing business, but none of her money was used or invested therein; that early in January, 1891, Columbus B. Hauk bought out his partner, Bruce, and paid for his interest $1,750, part in January and the balance in February.

The master reports that according to the testimony of Columbus B. Hauk, the purchase of the Washington avenue property was with money in a bank at Springfield, Ohio, which had been collected on notes belonging to Hauk and his wife; that the $6,000 for improving the Washington avenue property came from money collected by Hauk for his wife; that they were jointly interested in all the properties (previously bought) in proportion as each contributed to the purchase of the same; that they bought several pieces of property in which they both were concerned, and that the titles thereto were always taken in his name; that

the Washington avenue property was bought and the deed taken in his name in the same way.

The master further finds that in the matter of the lot there is reasonable presumption that the complainants acted upon the faith of the property upon Washington avenue belonging to Columbus B. Hauk and that said property is liable for the complainants' debt.

The master further reports that in view of the evidence which shows a mixing of the funds of Mrs. Hauk with those of her husband for a long series of years, so that the identity of her funds has been completely lost, and of the investments and loans of their joint funds, and the absence of any contractual relationship between Mrs. Hauk and her husband, he is unable to find that the purchase of the Washington avenue property was with the funds then belonging to the defendant Joanna N. Hauk. The master then goes on to say :

" If the wife permits her husband to take possession of and invest the funds as his own for a series of years, and to make use of the same and the property obtained therewith, and establish a credit for himself, then, in my opinion, the funds should no longer belong to the wife, but should, in law, be treated as belonging to the husband. There does not appear to be anything to indicate a loan of the wife's money to her husband. In fact, the surrounding circumstances in this case are just as consistent with a gift as with a loan.

" I am of the opinion, therefore, and so find as a conclusion of law, that Mrs. Hauk, having permitted her funds to remain in the hands of her husband for a long series of years, under the circumstances and conditions herewith found and set forth, should now be precluded and estopped from making any claim thereto from the creditors of her husband.

" The fact that Columbus B. Hauk was continually, during a long series of years, in the possession of and investing his wife's funds, would certainly tend to give him credit and standing as a business man, even in the absence of any special representation as to any particular property, and I am of the opinion that the circumstances in this case, being within the rule laid down in numerous cases decided by the Supreme Court of this State, that where a wife has per-

Hauk v. Van Ingen.

mitted her husband for a long series of years to take title to her lands and receive her moneys and to hold himself out to the world, in a general way, as the owner of the same, there is a reasonable presumption that the creditors act, to some extent, upon the faith of such ownership, and that in such case the wife should not, at the last moment, be permitted to withdraw the property from the use of his creditors. Although Hauk may have been justified in believing that he was solvent and able to pay his debts in 1891, and may have been justified in making his sworn answer in this cause, denying his insolvency, yet the facts as consequently developed, show that he was very much in error, and that when, within a space of three months thereafter, he turned over his property to his creditors for the payment of his debts, the assets remaining in his hands were found to be largely deficient for that purpose."

The report of the master was confirmed by the chancellor and a decree was entered setting aside the conveyance of the Washington avenue property to Mrs. Hauk and ordering that the same be sold and the proceeds applied in satisfaction of the complainants' judgment.

The denial by the defendant, under oath, in this case, that there was any intention to defraud creditors in the making of the conveyance to Mrs. Hauk of the Washington avenue property, is not conclusive under the statutes of this State. If one makes a conveyance of his property for the purpose of hindering, delaying or defrauding creditors, such conveyance is fraudulent and void as to such creditors; whereas, if a husband makes a voluntary conveyance to his wife, when he is largely indebted, yet does not make such transfer with any intention of hindering, delaying or defrauding creditors, or other persons, the conveyance is not *ipso facto* fraudulent and void, but the question presented to the court, upon an application by creditors to set aside such conveyance, is, was the gift such a one, as, considering the pecuniary circumstances and condition of the grantor, was a reasonable and proper advancement and gift for the husband to make? If it appears from the evidence that such gift was not, under the circumstances, a reasonable and proper one, it will be, at the instance of

creditors defrauded by it, set aside, although the husband may have, in making the transfer, honestly believed that it was, as regards his wife and creditors, a rightful and proper thing for him to do; and in determining whether such gift was a reasonable and proper one, the subsequent condition and course of events, with reference to the pecuniary circumstances of the grantor, may be taken into consideration. In other words, a man may be honestly mistaken as to his pecuniary circumstances and think himself worth much more than he really is. If it turns out that he was mistaken—the true condition of his affairs at such time being made known—if it was evident that the gift by him was unreasonable, and as regards his creditors, unjust, it will be set aside. 1 Ency. of Pl. & Pr. 942; Phillips v. Kesterson, 154 Ill. 572, 574; Bell v. Devore, 96 Ill. 217, 223; Read v. Read, 135 Ill. 482, 489; Duval v. Duval, 153 Ill. 49–52; Hughes v. Noyes, 171 Ill. 575, 580, 583.

In the present case, what is contended by the defendants is, not that the transfer of the Washington avenue property was a gift or advancement, but a transfer to her for what had been purchased and improved with her money, and what equitably always belonged to her. From the evidence it appears that more than thirty years prior to the conveyance of the Washington avenue property, Mrs. Hauk received, under the will of her father, certain lots in Cincinnati, which were together sold for $6,400; that this sum, together with $11,600, was, by her husband, invested in the purchase of a farm at South Charleston, Ohio, the title thereto being taken in the name of Columbus B. Hauk; that this farm was afterward sold and the proceeds invested, from time to time, in various ways, in other pieces of real estate, and in notes and mortgages; that the titles to all the pieces of real estate into which any portion of the funds originally belonging to Mrs. Hauk entered, were always taken, with her knowledge and assent, in the name of her husband, and it does not appear that up to the time of the transfer of the Washington avenue property by Mr. Hauk to his wife, any of the proceeds, in whole or in part, of the money which

originally belonged to her, was ever taken or held otherwise than in the name of Columbus B. Hauk.

As the master well says, "the transactions between Mr. and Mrs. Hauk relative to the property which originally belonged to her, were as consistent with a gift as with a loan." It does not appear that at any time any accounting was ever had between Mr. and Mrs. Hauk as to his investment of the funds that came to her from her father's estate, or that any memorandum thereof was ever given by him to her; while it does appear, that from time to time, as is customary by husband and wife, there was talk between them as to the various investments, sales and purchases, which from time to time he made.

As is well said in Hughes v. Noyes, *supra:*

" A claim by a wife against her husband, first put in writing when his liabilities began to jeopardize his future, should always be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected at once, unless their statements are so full and convincing as to make the fairness and justness of the claim manifest."

The testimony of the parties to a transaction of this kind that there was no fraudulent intention, that the conveyance was made in good faith, can not prevail against facts which satisfactorily show that the conveyance was fraudulent as to creditors. Township v. Foley, 113 Mich. 622; Phillips v. Kesterson, 154 Ill. 572–574.

Granting that Columbus B. Hauk, in respect to the property which his wife obtained from her father's estate, has always occupied the position of a trustee as to the same, he has so mingled the funds with his own, and this with her knowledge and consent, that her property can not be separate from his; so, as regards other creditors, she, if his relationship to her is to be considered as that of a trustee, occupies the position, only, of a general creditor, because the funds which originally came to him can not be followed. The identification of such a fund is a prerequisite of a right to follow it. Wetherell v. O'Brien, 140 Ill. 146; Kneisley

v. Weir, 81 Ill. App. 251; Dillman v. Nadelhoffer, 162 Ill. 625–631.

With the knowledge and assent of Mrs. Hauk, the title to this property stood of record, from November 9, 1889, until January 13, 1891, in the name of her husband.   During this period he purchased from the complainants the goods for which their judgment was obtained.  ·Upon the strength of his apparent ownership of such property he obtained credit; and it is neither just nor equitable that she should now, as against them, be permitted to assert that this property all the while belonged to her.   Keady v. White, 168 Ill. 76.

It may be that she did not know of the representations made July 1, 1887, and February 25, 1890, by her husband to the complainants, concerning his financial condition, among which was the statement that he was the owner of real estate to the amount of $30,000, but she did know that if he made such representations, or if the complainants or other creditors investigated his financial condition, they would find the title of the property now under consideration, standing of record in his name.

During the progress of the trial the complainants were permitted to amend their bill, by stating that they were, at the time of said conveyance, creditors of Columbus B. Hauk.   This amendment introduced no new cause of action. It was but a mere enlargement of the previous allegations that they had obtained judgment against him and had execution issued thereon and. returned " no property found." Haynie v. C. & A. R. R. Co., 9 Ill. App. 105; Dillman v. Nadelhoffer, 162 Ill. 625; Morrill v. Kilner, 113 Ill. 318.

So far as appears, there was not made in the court below and there certainly is not made here, any question as to whether the order of sale of the Washington avenue property should not have been subject to the dower interest of Mrs. Hauk in said property.   We have therefore not considered such matter.

The decree of the Circuit Court is affirmed.