## Abe Cohen, Appellee, v. Haia Solomon et al., on appeal of Fanny Kauffmann, Appellant.

### Gen. No. 26,593.

1. EXECUTION—*what not prerequisite to bill in aid on deficiency decree.* To enable complainant in a suit to foreclose a mortgage in which he obtained a deficiency decree, to maintain a bill in aid of execution under the deficiency decree and to remove conveyances by defendant, attacked as fraudulent, it was not necessary that he exhaust his legal remedies against other property of defendant, or that he even have an execution issued on the deficiency decree judgment.

2. EXECUTION—*unnecessary to prove insolvency on bill in aid.* It is unnecessary for a judgment creditor to prove insolvency of the judgment creditor to enable him to maintain a bill in aid of execution and to remove fraudulent conveyances made by the debtor.

3. EXECUTION—*averment in bill in aid of return "no property found" as surplusage.* An averment, in a bill in aid of execution and to remove fraudulent conveyances, of the issuance and return of an execution "no property found" is unnecessary and, if made, will be treated as surplusage and need not be proven.

4. FRAUDULENT CONVEYANCES—*when evidence sufficient to show.* Evidence *held* to show that conveyances made between defendants were mere shams and in no sense bona fide, but made only for the purpose of preventing complainant from realizing the amount due him on a deficiency decree, and to entitle him to have the conveyances removed as obstacles in the way of the enforcement of his lien under an execution issued upon the deficiency judgment.

Appeal from the Superior Court of Cook County; the Hon. CHARLES M. FOELL, Judge, presiding. Heard in this court at the October term, 1920. Affirmed. Opinion filed June 13, 1921. *Certiorari* denied by Supreme Court (making opinion final).

CHARLES J. O'CONNOR and RODERICK H. O'CONNOR, for appellant.

EPSTEIN & FEIWELL and KAPLAN & KAPLAN, for appellee; WILLIAM J. STAPLETON, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Defendant appeals from a decree to remove two conveyances as fraudulent against the rights of complainant.

The bill in this case was a bill in aid of an execution and sought to remove the two conveyances as fraudulently made, in order to prevent complainant, the judgment creditor, from obtaining a satisfaction of his judgment.

The master's findings of fact are well stated and his conclusions thereon abundantly supported by the evidence in the record. These facts are that on November 13, 1917, in a decree of foreclosure in favor of complainant against Haia Solomon in the superior court, the premises foreclosed were sold for $450; that on November 19, 1917, a deficiency decree for $2,347.47 was entered in the foreclosure suit against the defendant therein, who was also known as Ida Solomon; that prior to November 19, Ida Solomon owned two certain pieces of real estate, fully described in the master's findings of fact, one known as the Lamon avenue property and the other as the DeKoven street property; that on November 20, 1917, complainant caused an execution to be issued on the deficiency decree and delivered to the sheriff, who on November 22, 1917, returned the execution "No part satisfied"; that Ida Solomon, by a warranty deed dated September 4, 1917, recorded November 13 thereafter, conveyed the Lamon avenue property to the defendant, Fanny Kauffmann, for stated consideration of $10 and other good and valuable considerations, subject to incumbrances aggregating $24,500 and to general taxes and special assessments levied after 1916; that Ida Solomon, by warranty deed dated and recorded on the same dates as the previous deed, conveyed to defendant Kauffmann the DeKoven street property for a stated consideration of $10; that no contract for the sale and purchase of said real estate was ever entered into between Solomon and Kauffmann pre-

liminary to the conveyance of the same to Kauffmann; that the conveyances were made at the home of defendant in the presence of Ida Solomon, defendant, Jerry Solomon and Phineas Solomon, the latter of whom acted as attorney for both the parties to the transaction; that Ida Solomon on October 1, 1918, subsequent to her conveyance, collected a balance of $6 for rental of one of the apartments on the Lamon avenue property and receipted therefor; that during the months of October, November and December, 1918, Phineas Solomon collected rentals of one of said apartments and signed receipts therefor in his own name; that during the month of January, 1919, Phineas Solomon collected rent from one of the tenants and receipted therefor, and that on the 6th of February, 1919, a receipt signed ".J. Solomon" was delivered to one of said tenants for rent paid for the month of February, and that all of the foregoing collections of rent were made for the account of Ida Solomon; that Ida Solomon, beneficiary under certain fire insurance policies on the Lamon avenue property, assigned her interest as owner to defendant on May 3, 1918, with the consent of the agents of the insurance company obtained on May 18, 1918, a period of eight months subsequent to the making by her of the conveyances above recited; that on October 11, 1917, subsequent to the date and delivery of the two deeds above mentioned, Ida Solomon, by trust deed dated October 15, 1917, conveyed to Sidney Adler, as trustee, the Lamon avenue property, as security for certain notes aggregating $4,500, which trust deed was recorded October 13, 1917; that on October 12, 1917, an application was made to the Chicago Title and Trust Company, signed by Phineas Solomon, for a mortgage guaranty policy on the Lamon avenue property, in which it was stated the premises were in possession of Ida Solomon and the tenants occupying the same; that in accord with said application a mortgage

guaranty policy was issued to Sidney Adler by the Title and Trust Company; that on October 19, 1917, Ida Solomon made an affidavit in connection with the application for the mortgage guaranty policy, stating that since July 1, 1917, she had not executed any bail bond in any of the courts of this State; that her occupation was that of housewife, her place of business the Lamon avenue property, stating that the affidavit was made for the purpose of inducing the Chicago Title and Trust Company to issue its guaranty policy; that the bill of sale to a grocery store at 1967 Montrose avenue, from Theodore Bombos to Jerry Solomon was dated November 28, 1917, and acknowledged before a notary public November 30, 1917, and that the bill of sale from Fanny Kauffmann to Ida Solomon, which was said to constitute part consideration for the conveyance of the Lamon avenue property, was dated September 4, 1917, on which date Fanny Kauffmann was not the owner of said grocery store, since no transfer of the same was made until November 28, 1917; that Phineas Solomon represented Ida Solomon in the foreclosure suit, in which a decree was entered in favor of complainant; that Phineas Solomon attended the master's sale in the foreclosure suit; that he acted as counsel for both the defendants, and by reason of the close relationship existing between all the parties and the dealings between them, said Phineas Solomon was fully cognizant of the facts pertaining to the entry of the decree, the sale of the premises by the master, the amount of the deficiency found by the decree after the sale of the premises, the making and recording of the two warranty deeds above set out and all matters relating to the transactions between Ida Solomon and Fanny Kauffmann; that Fanny Kauffmann never engaged in any business, bought or sold real estate, prior to the conveyances aforesaid; that she did not consult her husband concerning any of the transactions described or in any of

the properties involved; that she had no knowledge of the income derived from the properties in question or the expenses necessary to maintain the same or the amount of interest due upon any incumbrance upon the premises at the time the same were conveyed to her; that Carl Kauffmann, the husband of Fanny Kauffmann, was by trade a painter and decorator, and at the time of the alleged conveyances earned in the neighborhood of $35 to $40 a week, sometimes earning as much as $60 a week; that aside from the earnings of Carl Kauffmann, Fanny Kauffmann had no independent income whatsoever, and no other funds than the sum of $500, which she claimed was saved by her from the earnings of her husband; that Ida Solomon purchased the Lamon avenue property for $36,000; that the purchase price alleged to have been paid by Fanny Kauffmann was $27,000; that the manner of payment consisted of the assumption by Fanny Kauffmann of a first mortgage indebtedness of $20,000, a second mortgage of $4,000, and a bill of sale to the grocery store on Montrose avenue at a valuation of $2,500 and a payment in cash of $500; that on September 4, 1917, the date on which the above described premises were conveyed, there had been a second mortgage incumbrance of $6,000 thereon, upon which there remained due October 3, 1917, approximately $3,500; that on September 4, 1917, there was no second mortgage incumbrance of $4,500; that no showing was made or explanation given for the depreciation in the value of the premises from $36,000 to $27,000 between the time of the purchase thereof by Ida Solomon and the transfer to defendant Kauffmann; that on November 19, 1917, the date of the deficiency decree, Ida Solomon was the owner of real estate known as 1453 Hastings street, Chicago, subject to an incumbrance of $2,000, and that said Ida Solomon paid for said property, about a year and a half prior thereto, approximately $4,000.

On these facts the master concluded as matter of law:

1. That no good or valuable consideration passed from Fanny Kauffmann to Ida Solomon for the conveyances of the two parcels of land described in the bill as amended; that said conveyances were not real but were a mere sham and were made with the intention of defrauding the complainant out of his just demands.

2. That both parcels of land are now held by the defendant, Fanny Kauffmann, in trust for the said Ida Solomon, and for her use and benefit and for the purpose of preventing a levy and sale of the same under the execution hereinbefore described; that the complainant, by reason of the entry of the deficiency decree and the issuance of the execution and return thereon, did all that was necessary to be done by him preliminary to the filing of his bill, and that it was not necessary to ascertain what other property Ida Solomon had, if any, from which said satisfaction of judgment could be obtained.

3. That the deficiency decree of the superior court above set out remains in full force and unsatisfied and that there is due thereon the sum of $2,347.47, with interest from the date of the decree; and the master recommends, upon the facts and the law so found by him, that a decree be entered ordering said conveyances to be set aside, vacated and declared null and void, and that the complainant be authorized to proceed upon the writ of execution, and that the sheriff be directed to levy upon, advertise and sell the same, etc.

Defendant relies for reversal upon the contention that the sheriff made no effort to collect the amount of the judgment by making demand upon the judgment debtor for payment on the execution and that the execution was returned on order of counsel as a foundation for filing the bill, and that so doing was

not a sufficient exhaustion of his legal remedies to permit complainant invoking the jurisdiction of equity to collect the debt; and upon the further contention that Ida Solomon, having retained ample property to pay the deficiency decree, the conveyances made by her to her daughter, Fanny Kauffmann, were not such a fraud upon the creditors as to justify a court of equity in setting aside such conveyances.

We think these contentions arise upon a misconception of the rights of the parties.

Defendant proceeds upon the theory that the bill in the instant case is in the nature of a creditor's bill under section 49 of the Chancery Act (J. & A. ¶ 929), which it is not. It is a bill in aid of an execution under the deficiency decree and to remove the two conveyances attacked as fraudulently made in an attempt to defeat complainant in procuring payment of the amount due under the deficiency decree. It was not even necessary, in the light of these fraudulent conveyances, to have issued an execution on the deficiency decree judgment. Complainant could proceed at once to remove the conveyances and have the land subjected to sale on an execution thereafter to be issued upon the judgment. This practice was settled at an early date in this State in *Weightman v. Hatch,* 17 Ill. 281, in which, among other things, the court said:

"Where a party seeks to remove a fraudulent conveyance or incumbrance out of the way of his execution, he may file his bill for that purpose so soon as he has obtained his judgment, and before he has made any effort to satisfy his judgment out of other property of the creditor. I cannot do better than to quote what was said on this subject by this court in the case of *Miller v. Davidson,* 3 Gil. 518: 'Where a creditor seeks to satisfy his debt out of some equitable estate of the defendant, which is not liable to a levy and sale under an execution at law, then he must exhaust his remedy at law by obtaining a judg-

ment and getting an execution returned *nulla bona,* before he can come into a court of equity for the purpose of reaching the equitable estate of the defendant; and this is necessary to give the court jurisdiction, for otherwise it does not appear but that the party has a complete remedy at law.    This is what may be strictly termed a creditor's bill.    There is another sort of creditor's bill very nearly allied to this, yet where the plaintiff is not bound to go quite so far before he comes into this court, and that is where he seeks to remove a fraudulent incumbrance out of the way of his execution.    There he may file his bill as soon as he obtains his judgment.' "

In the *Weightman* case the court further said:

"As to him, the conveyance being void, the creditor has the right to place himself in the same position which he would have occupied had it never been made, and first seek satisfaction out of this land.    The grantee's title being tainted by fraud, he has no right to say that all other means to satisfy the debt shall be exhausted before he shall be disturbed in his title. In this case, then, the complainant was not bound to issue any execution whatever.    He was as much entitled to the relief asked without it as with it."

This is precisely the condition of the case at bar. To have issued an execution and had a return made thereon would serve no useful purpose and would have lent no strength to the right of complainant to maintain his bill to remove the conveyances out of the way of the levy of an execution upon the deficiency judgment.    The rule thus announced has never been departed from in this State, but has been frequently reiterated in many subsequent decisions.    Moreover, the conveyances were void as to complainant, a judgment creditor, under section 4, ch. 59, Rev. St. (J. & A. ¶ 5870).    We therefore hold that all preliminary steps necessary to be taken to entitle complainant to maintain his bill had been taken before its filing.    Nor was it necessary for complainant to prove insolvency of the judgment debtor to give equity jurisdiction of

the bill. An averment in the bill of the issuance and return of an execution "no property found" is unnecessary, and, if made, will be treated as surplusage and need not be proven. *Hughes v. Noyes,* 171 Ill. 575; *Dawson v. First Nat. Bank of Paris,* 228 Ill. 577.

The two conveyances attacked were proven to be mere shams and pretenses and were not in any sense bona fide. It was evidently a family arrangement entered into for the express and only purpose of preventing complainant from realizing the amount due on the deficiency judgment. Complainant proved his case within the scope of the averments of the bill, and in accord with well-settled legal principles he was entitled to have the two conveyances attacked removed as obstacles in the way of enabling him to enforce his lien under an execution to be issued upon the deficiency judgment. It was not necessary for complainant to exhaust all his remedies at law as a *sine qua non* to his right to file the bill in the instant case.

There is no reversible error in this record and the decree of the superior court is therefore affirmed.

*Affirmed.*

DEVER and MCSURELY, JJ., concur.