ROBERT J. BELL

*v.*

JOHN W. DEVORE *et al.*

*Filed at Springfield September 30, 1880.*

| | |
|---|---|
| 96 | 217 |
| 34a | 537 |
| 96 | 217 |
| 145 | 613 |
| 96 | 217 |
| 154 | 574 |
| 96 | 217 |
| 97a | [2]648 |
| 96 | 217 |
| 196 | [2] 37 |

1. FRAUDULENT CONVEYANCE—*facts showing.* Where a party, after becoming indebted, made a voluntary conveyance of most of his lands to his son and son-in-law without any consideration, and the latter, some years after, reconveyed to the debtor, who, soon after notice that the debt would be enforced against him, conveyed the same land to the son-in-law, who, in a few days afterwards, conveyed the same to the debtor's wife, there being no consideration for either deed, and when advised by an attorney that the last deeds were not good for want of a consideration, the debtor and his wife conveyed this and other lands owned by him, including his homestead, to the

same son-in-law, taking his note for $2500, and very shortly afterwards the debtor, who continued to occupy the premises, sold the notes to a neighbor, a poor man, for $1000, whose land was mortgaged, and proceedings pending to foreclose the same, and who had been trying to borrow money to relieve his own property, and he immediately afterwards transferred the notes to the maker for $1500, $1000 of which, he testified, was paid down, and the remainder in a few days after the transfer, it was *held*, notwithstanding the testimony of the grantor and grantee that the last conveyance was made in good faith, and without any fraudulent intent, that the proof showed the same was made in fraud of creditors, and should be set aside, except as to the land exempt as a homestead.

2. SAME—*evidence on question.* Where the facts and circumstances of a transaction show it to be fraudulent, as against creditors, the declarations of the parties to it under oath that it was in good faith, and without fraudulent intent, will avail but little.

3. HOMESTEAD—*fraudulent conveyance.* Where the owner of a homestead, and his wife, conveyed the premises to a third person, who reconveyed to the wife, the purpose of the transaction being to hinder and delay creditors, the court, upon declaring the conveyances fraudulent as against creditors, on bill filed, permitted the conveyance of the homestead to stand.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Shelby county; the Hon. W. R. WELCH, Judge, presiding.

Mr. HENRY B. KEPLEY, for the appellant, upon the question of the fraudulent character of the conveyance complained of, cited *Twine's case,* 1 Smith's Leading Cases, 33; Bump on Fraud. Con. 79, 89, 96, 98, 232, 229, 282, 479; *Bois, Admx.* v. *Henney,* 32 Ill. 130; Kerr on Fraud and Mistake, 199, 201.

Messrs. THORNTON & HAMLIN, for the appellees:

If no lien exist, a man may make a legal and valid sale of his property, for a fair and honest consideration, though thereby his creditors may be prevented from reaching the property. *Waddams* v. *Humphrey,* 22 Ill. 663; *Hessing* v. *McCloskey,* 37 id. 352.

It is not sufficient to set aside the deed, that its effect is to hinder and delay creditors. To make it void, the vendee, as

well as the vendor, must be guilty of fraud. *Ewing* v. *Runkle*, 20 Ill. 448; *Brown* v. *Riley*, 22 id. 52; *Gridly* v. *Bingham*, 51 id. 153.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed by Robert J. Bell, to set aside two certain conveyances of real estate made by Wilson Martindale and wife to John W. Devore, as being fraudulent as against creditors, and to subject the said real estate to sale under execution. Upon hearing, the circuit court dismissed the bill. On appeal to the Appellate Court for the Third District, the decree was affirmed, and the complainant appealed to this court.

It appears that on the 27th day of March, 1867, Wilson Martindale, with others, executed a joint and several note to Bell for $890.14, payable twelve months after date, with eight per cent per annum interest, Bell and all the makers of the note, except Martindale, being residents of Ohio. Some payments were made on the note. In July, 1878, Martindale was notified by the attorney of Bell that the note was unpaid, and that, if not paid, suit would be brought against him at the next September term of the circuit court. Suit was accordingly commenced against Martindale on the note August 9, 1878, and judgment thereon was rendered against him September 24, 1878, in the circuit court of Effingham county, in this State, for $1487.17, the balance due on the note, and costs of suit. Execution on the judgment was immediately issued, directed to the sheriff of Effingham county, the county of Martindale's residence, and returned no property found. Thereupon execution issued on the judgment to the sheriff of Shelby county, and was levied upon 160 acres of land in that county, and 60 acres of it was bid off at sheriff's sale for the benefit of Bell, at $600, and that amount credited on the execution.

It appears that Martindale owned 180 acres of land in Shelby county, and 47 acres of land in Effingham county, 27

acres of which latter constituted his homestead in Freemanton, in that county, where he resided; that, in 1872, Martindale, without any valuable consideration, conveyed all of said land in Shelby county, 160 acres of it, to Wakefield Martindale, his son, and John W. Devore, his son-in-law, and 20 acres to said Wakefield Martindale; that, in 1877, said Wakefield Martindale and wife and John W. Devore and wife reconveyed said 160 acres of land to Wilson Martindale; that nothing was paid for any of these conveyances, the land having only been held for Wilson Martindale; that soon after Wilson Martindale was notified, as before stated, in July, 1878, that the note was still unpaid, and that, if not paid, payment thereof would be enforced against him by suit, to-wit: on July 25, 1878, he and his wife conveyed to John W. Devore, his son-in-law, the 160 acres of land in Shelby county, and on the 29th of the same July Devore conveyed the same land to Nancy Martindale, wife of Wilson Martindale.

These deeds, too, were admittedly made without any consideration. It appears that after the execution of these last deeds, Wilson Martindale had a conversation with an attorney, the same attorney who defended the suit against Martindale on the note, and the attorney advised him that these last deeds were not good, because nothing was paid. After this, and on the 11th day of September, 1878, after summons had been served on Wilson Martindale in the suit upon the note, Wilson Martindale and his wife made another deed to said John W. Devore for the 160 acres of land in Shelby county, and at the same time conveyed to the said John W. Devore, by another deed of that date, all the land of Wilson Martindale in Effingham county, including his homestead.

These last conveyances are the ones sought to be set aside.

It thus appears that there had been three different conveyances by Wilson Martindale to John W. Devore of this land in Shelby county. The first two were undeniably fraudulent

as against creditors. As bearing upon the point that they were made for the purpose of defeating the collection of this very debt of Bell, Devore testifies: "I will not say that the debt to Bell against Martindale had nothing to do with the making of said two deeds, nor will I say that it did have anything to do with it. The matter was talked over. It was thought best to put the title to the land in Nancy Martindale, as she is sharper in business matters than the old man."

Martindale testifies: "I will not say that these conveyances were not made to prevent the land from being taken on the debt to Robert J. Bell. I won't say that that was the cause of the deeds being made. There was some talk of that kind at the time. I can't remember what was said." But after the making of the second deed of Martindale, of July 25, 1878, Martindale is advised by his attorney that the deeds were not good, because nothing was paid.

This third deed then, of September 11, 1878, is made. A very strong suspicion would arise that this last deed was part and parcel of the same scheme with the two former deeds, and that it partook of the same fraudulent character. This attorney spoken of prepares the deeds, and comes from Effingham to Freemanton to see to their execution. Devore is present at the time. Martindale testifies that at this time the attorney said to him that in order to make the deeds good something must be paid, or notes given. Why such a remark in reference to a real and fair sale and purchase? What occasion for it, unless the deeds were a contrivance to put the title of the land where it could not be taken to satisfy Bell's approaching judgment, and it was necessary that there should be an appearance of consideration?

The whole transaction was unusual, and the attendant circumstances extraordinary.

No sufficient reason appears for an actual buying or selling. Devore having a small farm of 90 acres, goes in debt for 207 acres of land, separated miles apart, most of it distant from his home, with no intent of occupying it. Martindale sells

to his son-in-law Devore, not a part, but all of his real estate, not even retaining his homestead, and continues to live upon the place. Devore gives his notes for $2500 for the land. This was on September 11, 1878, and yet before September 16, 1878, the first day of the term of the court, Devore has all the notes back in his possession.

The operation by which this was accomplished was most remarkable.

One Loveless, a poor man, a neighbor to Devore, with a mortgage on his farm, a foreclosure suit on which was pending in court, (to pay which mortgage he had been trying to borrow money,) without any special business, but by chance, calls after dark upon Martindale, a comparative stranger, at whose house he had never been before, and after being' there a little while Martindale asked him if he desired to buy some notes, saying he had $2500 in notes of John W. Devore, and would sell them for $1000 in money. Loveless had $1000 in money with him and bought the notes for $1000, and paid Martindale the money, and the latter delivered the notes to Loveless. Loveless then sold to Devore the $2500 of notes for $1500, Devore paying at the time $1000 in money and $500 afterward. This is the account which Loveless gives. He says he considered the notes good, that he thought Devore was good for $2500, and was considered a man who paid his debts.

Fifteen hundred dollars was no insignificant sum to a man in Martindale's circumstances. Why should he voluntarily, and at once, offer to take $1000 for the $2500 of notes, submitting to the sacrifice of $1500 on them? And why did he not make the offer first to his son-in-law, Devore, who lived only a mile distant, and allow him the benefit of the purchase? And why did Loveless submit to a sacrifice of $1000 upon the notes? It is not in the ordinary course that a man with a mortgage upon his farm, and wanting to borrow money to pay it off, would have a spare $1000 in his pocket to buy notes with. But Loveless says it was his wife's money. How

could he invest his wife's money in the purchase of notes, but not appropriate it to pay off a mortgage resting upon his farm and their home, to foreclose which suit was then pending?

There may have been such a transaction in form, as thus narrated, but that there was such a real transaction, had in good faith, we can not believe.

It is testified that the conveyances were made and the whole transaction had in good faith and without fraudulent intent, and it is insisted that this is controlling in the case. Where the facts and circumstances show a transaction to be fraudulent, as against creditors, declarations under oath that it was in good faith and without fraudulent intent, avail but little.

The facts and circumstances of the case, as they appear in evidence, satisfy our minds that the conveyances were made with intent to hinder, delay, or defraud creditors, and the intent participated in by the grantee; that the transaction which was had, giving the appearance of a purchase for a valuable consideration made in good faith, was colorable only. The opposing evidence in the case of good faith, and that there was no fraudulent intent, can not prevail against the facts and circumstances, which show satisfactorily that the conveyances were fraudulent as against creditors. The conveyance of the homestead will be allowed to stand.

The decree of the Appellate Court is reversed, except as to the homestead, and the cause remanded for further proceedings in conformity to this opinion.

*Decree reversed.*