TOWNSHIP OF MAPLE VALLEY v. FOLEY.

FRAUDULENT CONVEYANCES—HUSBAND AND WIFE—ESTOPPEL.
  A conveyance by a husband to his wife, without a present con-
  sideration, made at a time when the husband is sought to be
  held as surety upon the bond of a defaulting township officer,
  and embracing property the title to which has stood in his
  name for 25 years, and which was included in his estimate
  of assets when he gave the bond and justified as to his re-
  sponsibility, is fraudulent as to the township, even though
  the property was originally purchased under an arrangement
  entered into by the wife without the knowledge of the hus-
  band, and was paid for out of a common fund to which her
  earnings contributed.

Appeal from Wayne; Carpenter, J. Submitted June
11, 1897. Decided July 13, 1897.

Bill by the township of Maple Valley against James
Foley and wife in aid of execution. From a decree dis-
missing the bill, complainant appeals. Reversed.

*Avery Bros. & Walsh* and *E. C. Babcock*, for com-
plainant.

*T. E. Tarsney*, for defendants.

MOORE, J. Complainant filed a bill to set aside a con-
veyance made by James Foley to his wife, Mary Foley,
and to subject the real estate described therein to levy and
sale upon an execution obtained by the complainant against
James Foley and others. In the circuit court the bill was
dismissed. The complainant appeals.

In April, 1891, James Foley and another became sure-
ties on the bond of the town treasurer for the township of
Maple Valley. Mr. Foley at that time justified as to his
responsibility, and declared himself worth $3,000 over
and above all liabilities and exemptions. The township

treasurer became a defaulter, and in October, 1892, his bondsmen were notified that the township would look to them for the deficiency. April 13, 1893, James Foley conveyed to his wife certain real estate on Porter street, in Detroit, without any present consideration passing between them. The bill seeks to subject that property to levy and sale, and also other property. The solicitors for complainant concede that they have not made such a case as to entitle them to reach the other property, and the discussion will be confined to the Porter-street property. A claim is made on the part of the defendants that the pleadings are so defective that complainant cannot recover, but the record is in such condition that we do not think the claim can now for the first time be urged.

At the time the bond was given, the defendants both lived in Sanilac county, and had lived there since 1880, upon a farm which was worth $3,000 at the time the bond was given. We think it is fairly established by the evidence that, if the Porter-street property was not included in his estimate when he gave the bond, the defendant James Foley was not worth, over and above his liabilities and exemptions, the sum of $3,000. The defendants were married in 1861, in Detroit, where they continued to live until they moved to Sanilac county. At the time of the marriage, James Foley owned 80 acres of wild land in Sanilac county, and had about $40 in money. His wife at that time had about $130 in money. It is claimed on the part of the defendants that the Porter-street property was bought by the wife, and paid for by what she was able to earn in taking in washings, taking boarders, and from the products of fowls and cows which she kept. It is also claimed that the making of the deed in April, 1893, was for the purpose of giving to the wife the legal title of what was already equitably hers.

It is shown by a preponderance of proof that both defendants were industrious people. James Foley was in the employ of a railway company. The wife, in addition to attending to her household duties, took in washing,

and took some boarders, and also, at times, kept cows and hens, and sold butter and eggs. For a time after they were married, defendants lived in rented houses. Mrs. Foley tired of this, and, without consulting with her husband, arranged to buy the Porter-street property, which was sold upon credit. When told of what she had done, the husband said he had the 80 acres of land, and did not want any city property. The husband delivered to the wife his earnings, and the first $40 paid on the Porter-street lot was furnished by him. The other payments were made out of the common fund to which both had contributed. A house was built upon the property at an expense, including the painting, of nearly $400. This was also paid out of the common fund.

The deed to this property was made August 10, 1867, and was made to James Foley. Mrs. Foley did not read or write, but at the time the deed was brought home she knew it was made to her husband, and at that time it was talked that it should have been made to her. The deed was kept until June, 1878, when it was for the first time put upon record. In 1880 the defendants moved to Sanilac county, and the house on Porter street was rented. The rent was applied to the payment of the taxes, and the balance from time to time was sent in a registered letter to James Foley, in Sanilac county. It is claimed by defendants that the money was at once turned over to Mrs. Foley. After the removal to Sanilac county, James Foley often spoke of his Detroit property, and of his receiving rent from it, and of the taxes being high; and upon one or two occasions Mrs. Foley was present, and participated in a talk of like character with a store keeper who was selling Mr. Foley goods upon credit. At the time defendant Foley signed the bond and justified as to his responsibility, he said the valuable part of his property was the Detroit property. The property was assessed to Mr. Foley, and it was insured in his name. After the default occurred in the bond, Mr. Foley swears, he consulted a lawyer, and was advised by him to deed the

Porter-street property to his wife; that he then consulted his wife, who wanted the deed made to her to secure her; and that he then made the deed to her. The wife testified that the deed was recorded before she went to Sanilac county; that she left it that way until the township treasurer failed. She further testified:

"I got the deed because there was danger. The danger was this lawsuit pending. That was the reason I wanted him to give me the deed of the place."

The record shows that Mr. Foley consented to his wife's taking boarders and taking in washing and keeping the fowls and cows, but it does not show that it was agreed that she should have the proceeds. Mrs. Foley testified:

"There was no talk between myself and husband that what I earned taking in boarders and selling milk belonged to me."

It is very evident that, while the purchase of the property was due to Mrs. Foley, it was paid for by the earnings of Mrs. Foley and her husband. The title was taken in his name, and held by him for more than 25 years. No attempt was made to put it in the name of anybody else until Mr. Foley became involved, and was likely to have a judgment rendered against him, and because of that fact the title was transferred from him to his wife. However innocent may have been the motives of the parties to the transaction, it was a legal fraud as to the creditors of Mr. Foley. 2 How. Stat. § 6203; *Felker* v. *Chubb*, 90 Mich. 24; *Iseminger* v. *Criswell*, 98 Iowa, 382; *Carbiener* v. *Montgomery*, 97 Iowa, 659.

The property is doubtless worth more than the amount of the debt. The defendants are given 90 days in which to pay the judgment, with interest and costs. In default of such payment, the deed will be set aside as to complainant, and the land be sold.

The decree below is reversed, and one will be entered here as indicated above.

Long, C. J., Grant and Montgomery, JJ., concurred. Hooker, J., did not sit.