## COLUMBUS B. HAUK *et al.*
*v.*
## EDWARD H. VANINGEN *et al.*

*Opinion filed April 16, 1902.*

1. HUSBAND AND WIFE—*when conveyance to wife is void as against creditors.* A voluntary conveyance from husband to wife for the purpose of placing the title in her name is void as against a judgment creditor of the husband whose debt existed when the conveyance was made.

2. SAME—*actual insolvency not necessary to render voluntary conveyance void.* If a person largely indebted makes a voluntary conveyance and shortly afterwards becomes insolvent, the conveyance may be set aside as in fraud of his creditors.

3. SAME—*what necessary to establish husband's agency for wife.* While a husband may act as agent for his wife in investing and taking care of her funds, yet where the rights of his creditors are involved the circumstances must show that they recognized the relation of agency between them.

4. SAME—*wife's claims more readily established if rights of creditors are not involved.* If the controversy respecting ownership of property is between husband and wife alone, the right of the wife to recover will be more readily maintained than where the rights of the husband's creditors have intervened.

5. SAME—*that wife permitted husband to hold himself out as owner is a material circumstance.* That the wife has permitted the husband to hold himself out as owner of the property, and thereby gained credit, is a material circumstance where the controversy is between the husband and judgment creditors.

6. SAME—*what amounts to consent by the wife to husband's obtaining credit.* By permitting her husband to hold title to property knowing that he was engaged in mercantile business and in the constant purchase of goods, the wife consents that he may obtain credit upon his apparent ownership as it appears of record.

7. SAME—*when wife's funds become liable for husband's debts.* If a married woman obtains funds and places them in the hands of her husband to be invested by him in his name for his benefit, the property bought with such funds, as to creditors, will belong to the husband and be liable to seizure for his debts.

8. EVIDENCE—*effect where grantor swears that he had no fraudulent intent.* Where the defendant to a creditor's bill, when called as a witness by complainant, testifies that he had no intent to defraud creditors by making the conveyance, yet if the facts testified to by him show that the conveyance to his wife was voluntary and

without consideration while he was insolvent or largely indebted, such facts make the act fraudulent in law, regardless of intent.

9. PLEADING—*when amendment of creditor's bill does not introduce new cause of action.* If a creditor's bill alleges facts showing that the complainant was a creditor of the defendant, an amendment which merely fixes the time when he first became a creditor, and alleges such fact, does not introduce a new cause of action.

10. TRUSTS—*effect where a trustee mingles trust fund with his own money.* If a trustee converts a trust fund into money and mingles it with his own so that it cannot be separated, the beneficial owner occupies the position of a general creditor, and cannot follow the fund into the hands of an assignee for the benefit of creditors.

*Hauk* v. *VanIngen*, 97 Ill. App. 642, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. E. F. DUNNE, Judge, presiding.

This is a creditors' bill, filed on February 11, 1892, setting up the recovery in the circuit court of Cook county of a judgment on October 2, 1891, for $2254.90 by the appellees, Edward H. VanIngen and David T. Leahy, as partners under the firm name of VanIngen & Co. in the city and State of New York against the appellant, Columbus B. Hauk, impleaded with Robley D. Bruce and Henry D. Hauk, the issuance of execution on said judgment, and the return of the same unsatisfied; and also setting up the execution of a warranty deed on January 13, 1891, which was recorded on January 20, 1891, in the recorder's office of Cook county, by Columbus B. Hauk, conveying to his wife, Joanna N. Hauk, who is made a party defendant to the bill, the north forty feet of lot 22 of block 66 in Hyde Park, etc., said premises having a west front of forty feet on Washington avenue. The bill alleges that, on and before January 1, 1891, Columbus B. Hauk was engaged in the mercantile business in Springfield, Ohio, and that he became indebted to divers persons to a large amount. The bill charges that, at the time of the conveyance, Hauk was the owner in fee

simple of the property conveyed, and that then, and prior thereto, he was insolvent; that on April 17, 1891, he executed and delivered to one George S. Dial a deed of assignment of all his property real and personal, in trust for the payment of his debts, but that said deed of assignment did not embrace the premises so conveyed; and that said conveyance to Joanna N. Hauk was made without valuable consideration, or with the intent to hinder, delay or defraud the creditors of Columbus B. Hauk. The bill seeks to set aside the deed, so made by Hauk to his wife, as fraudulent as against appellees, as creditors.

Columbus B. Hauk and Joanna N. Hauk, his wife, filed an answer admitting the judgment, the issuance of execution, the engaging in mercantile business as alleged in the bill, the incurring of indebtedness, and the making of a general assignment on April 17, 1891, to Dial of Springfield, Ohio, in trust for the benefit of creditors. The answer, however, denies that Hauk was the owner of the property conveyed to his wife, but sets up that it was purchased with her money on November 9, 1889. The answer admits that, when the purchase was made on November 9, 1889, the title was conveyed to Columbus B. Hauk, but asserts that it was so taken in good faith and held by him in trust for the benefit of his wife. The answer admits the execution of the deed by Hauk to his wife on January 13, 1891, and denies the insolvency of Hauk at that time, or that the deed was made with the intention of hindering, delaying or defrauding creditors.

Subsequently, on June 9, 1899, by leave of court, the bill was amended by inserting the following allegation: "That said complainants at the time of said conveyance of the premises aforesaid, and prior thereto, were creditors of said Columbus B. Hauk." It was stipulated by counsel for the defendants below, that the foregoing amendment to the bill might be filed. Replication was filed to the answer, and the cause was referred to a master in chancery, who took testimony and made a report.

Exceptions were filed to the report both by the complainants and by the defendants below. The exceptions of the complainants were sustained, and those of the defendants were overruled by the final decree of the court, entered on June 13, 1900. This decree confirmed the report, except as to the matters therein excepted to by the complainants, and found that the equities of the cause were with the complainants; that the material allegations of the bill, and of the amendment thereto, were true; that there was due to the complainants $2157.54, with interest from September 1, 1892, at five per cent per annum; that, on or about January 1, 1891, and before that time, Hauk was engaged in the mercantile business in Springfield, Ohio, being a member of the firm of Bruce, Hauk & Co.; that the indebtedness, for which the judgment was rendered on October 2, 1891, was for goods, wares and merchandise sold by complainants below to Bruce, Hauk & Co. from July 5, 1890, to November 13, 1890; that the bulk of the goods in the account were bought between August 1, 1890, and September 15, 1890; that such goods were sold on a credit of four months; that the account was due on January 16, 1891; that, on and prior to January 13, 1891, Hauk held the title in fee simple to said premises; that, by warranty deed dated January 13, 1891, acknowledged in Springfield, Ohio, on January 16, 1891, and recorded as aforesaid on January 20, 1891, he conveyed the premises to his wife, who now holds the title to the same; that at that time he was insolvent, or in contemplation of insolvency; that he executed an assignment to Dial, as above stated, on April 17, 1891; that said conveyance so made by him to his wife was made and accepted without valuable consideration, and was, in legal effect, fraudulent as to the rights of the complainants, and other creditors; that said Columbus B. Hauk is the equitable owner of said premises so conveyed, or enough thereof to satisfy the claim of the complainants; that complainants were creditors of Hauk

when the conveyance was made; that said conveyance was fraudulent and void as to the complainants, and that the premises are subject to the payment of said debt. It was thereupon by said decree ordered and adjudged, that said deed be set aside and held to be null and void as to complainants; and that the defendants, or one of them, should within thirty days pay $2906.25, with interest, etc., and a further sum for master's fees and costs, or in default thereof, that the premises with the improvements thereon should be sold at public sale, etc.; that out of the proceeds the master should pay to the complainants the amount so found due to them with interest, and, if there was any surplus, should hold the same subject to the further order of the court. An appeal was taken to the Appellate Court, and the Appellate Court has affirmed the decree of the circuit court so as above entered. This appeal is prosecuted from such judgment of affirmance.

WILLIAM W. GURLEY, and HORACE G. STONE, for appellants:

Where a husband receives the capital fund of his wife's property there is no presumption that she intended to give it to him. *Jackson* v. *Craft*, 186 Ill. 630.

The husband may in good faith lawfully prefer the wife and discharge any legally subsisting *bona fide* indebtedness to her, even if he thereby devotes to the payment of her demands the only property to which other creditors may resort for the payment of their claims. *Earl* v. *Earl*, 186 Ill. 370; *Tomlinson* v. *Matthews*, 98 id. 178.

Complainants had no evidence on the material issues, unless it be the testimony of Mr. and Mrs. Hauk, who were called as complainants' witnesses. Their testimony is substantially all against the complainants, who can not challenge their credibility. Complainants cannot use what is favorable and reject what is unfavorable, and hence the preponderance of evidence is against them. *Sawyer* v. *Moyer*, 109 Ill. 461; *Bowman* v. *Ash*, 143 id. 664.

The property in controversy was paid for by money belonging to the wife, placed by her in her husband's hands, and her claim upon the property is superior to that of any of his creditors. *Keady* v. *White*, 168 Ill. 83.

A husband may act as agent or trustee for his wife in the management of her property without subjecting that property to the payment of his debts. *Dean* v. *Bailey*, 50 Ill. 481; *Wortman* v. *Price*, 47 id. 22.

F. W. BECKER, for appellees:

A general denial of fraud or ownership by witnesses is of little effect if the facts and circumstances narrated by them disclose the contrary. 1 Ency. of Pl. & Pr. 942; *Phillips* v. *Kesterson*, 154 Ill. 572; *Bell* v. *Devore*, 96 id. 217.

The facts tend to show a gift, rather than a loan. *Reed* v. *Reed*, 135 Ill. 482; *Duval* v. *Duval*, 153 id. 49; *Briggs* v. *Mitchell*, 60 Barb. 288; *Hughes* v. *Noyes*, 171 Ill. 575.

The identity of the wife's money, as against creditors, is lost in the mixture of funds. *Wetherell* v. *O'Brien*, 140 Ill. 146; *Kneisley* v. *Weir*, 81 Ill. App. 251.

If a married woman places her money in her husband's hands to be invested in his name and for his benefit, the property bought, as to creditors, will be liable for his debts. *Nelson* v. *Smith*, 64 Ill. 394; *Hockett* v. *Barber*, 86 id. 74; *Lowentrout* v. *Campbell*, 130 id. 503; *Reed* v. *Reed*, 135 id. 482; *Dillman* v. *Nadelhoffer*, 162 id. 625; *Keady* v. *White*, 168 id. 176; *Smith* v. *Willard*, 174 id. 538; *Iseminger* v. *Criswell*, 98 Iowa, 382; *Porter* v. *Goble*, 88 id. 565; *Romans* v. *Maddux*, 77 id. 203; Wait on Fraudulent Con. (ed. of 1889,) sec. 305.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The question involved in this case is, whether a deed, made by a judgment debtor to his wife while he was in debt, is fraudulent and void as against the judgment creditor, so as to subject the land conveyed by the deed to the claim of the judgment creditor, or whether it is a valid

deed, vesting title to the land in the wife, so that she can hold it free from the claim of such judgment creditor.

On November 9, 1889, the lot in Hyde Park in contro- versy here was conveyed by a warranty deed to the ap- pellant, Columbus B. Hauk. The consideration named in that deed was $4000.00, and the amount actually paid for the lot was $4000.00. Of this amount, $2000.00 was paid in cash, and a note was given for the remaining $2000.00, which note was paid in January, 1891. The cash payment of $2000.00 was made by Columbus B. Hauk, and the note for the remaining $2000.00 was exe- cuted by Columbus B. Hauk, and, when it was due, was paid by himself. On March 24, 1890, a building permit for the construction of a house upon the lot was issued to the appellant, Columbus B. Hauk; and, in pursuance of said permit, a dwelling house was constructed upon the lot at a cost of $6000.00. This sum of $6000.00 for the construction of the house was paid by the appellant, Columbus B. Hauk, who had a bank account at the First National Bank in his own name. It was paid by checks upon his bank account, and there is some evidence, going to show that $4000.00 of the money used in the construc- tion of the house was borrowed by him from his son, Charles D. Hauk.

On January 13, 1891, Columbus B. Hauk conveyed the house and lot to his wife, the appellant Joanna N. Hauk, the consideration expressed in the deed being $12,000.00. This deed was acknowledged by Hauk on January 16, 1891, and recorded on January 20, 1891. No money what- ever was paid by Mrs. Hauk to her husband when the deed was made to her, nor is it claimed that any consid- eration passed from her to him at the time of the execu- tion of the deed.

On March 1, 1883, the appellant, Hauk, formed a partnership with one Weimer for the purpose of carrying on a general clothing business at Springfield, Ohio. The firm was originally Weimer & Co., but in 1884 Bruce and

Hauk bought out Weimer's interest in the partnership, and thereafter the firm was known as Bruce, Hauk & Co. This firm began purchasing goods of the appellees soon after its organization. Harry S. Hauk, a son of Columbus B. Hauk, was in the employment of Bruce, Hauk & Co , and represented his father's interest, and attended to the correspondence of the firm. The indebtedness, for which the judgment, forming the basis of the creditors' bill filed in this case, was rendered, was contracted by the sale of goods by appellees to Hauk between July 5, 1890, and November 13, 1890. The goods were sold on a credit of four months, running from the average time covered by the account, to-wit, September 16, 1890, making the account due on January 16, 1891.

It will thus be observed that, when the indebtedness involved in the present suit was contracted, the title to the lot in question stood in Columbus B. Hauk, and not in his wife. Three days before the indebtedness matured, to-wit, on January 13, 1891, the lot was conveyed by Hauk to his wife without any consideration whatever.

At the time the conveyance was made by Hauk to his wife on January 13, 1891, he was in debt to a large amount. He owed some $20,000.00 of mercantile indebtedness as a member of the firm of Bruce, Hauk & Co., and there were mortgages upon a homestead owned by him in Springfield to the amount of over $15,000.00. On April 17, 1891, about three months after he deeded the property in question to his wife, he made an assignment. Out of the firm assets only $1600.00 were realized, and out of the homestead in Springfield only $7500.00 were realized. From the foregoing statement of facts, it appears that the appellant, Columbus B. Hauk, while largely indebted, and while upon the eve of insolvency, if not actually insolvent, made a voluntary conveyance of a house and lot worth $10,000.00 to his wife without consideration. A voluntary conveyance from husband to wife for the purpose of placing the title in her name is void

as against a judgment creditor, whose debt existed when the conveyance was made. (*Keady* v. *White*, 168 Ill. 76; *Gay* v. *Gay*, 123 id. 221; *Marmon* v. *Harwood*, 124 id. 104; *Patterson* v. *McKinney*, 97 id. 41; *Hockett* v. *Bailey*, 86 id. 74). Such a voluntary conveyance to a wife, when the grantor is in embarrassed financial circumstances, is fraudulent as to existing creditors, even though the grantor retains an estate nominally in value equal, or more than equal, to all his indebtedness, when the event shows that the property retained is not sufficient to discharge all his liabilities. (*Hockett* v. *Bailey, supra; Marmon* v. *Harwood, supra*). Actual insolvency is not necessary in order to render a voluntary conveyance void; for if a person, largely indebted, makes a voluntary conveyance, and shortly afterwards becomes insolvent, that is enough to set aside the conveyance as fraudulent. (*Patterson* v. *McKinney, supra; Moritz* v. *Hoffman*, 35 Ill. 553; *Morrill* v. *Kilner*, 113 id. 318). In *Morrill* v. *Kilner, supra*, we said (p. 321): "Where a deed is made without consideration, or for a mere nominal consideration, and the grantor is at the time largely indebted, the transaction will be regarded as fraudulent, and may be impeached by creditors. A debtor in failing circumstances is only allowed to transfer his property by making a general assignment of it for the benefit of creditors. (*Phelps* v. *Curts*, 80 Ill. 109). In this case, the conveyance was made without consideration, when the grantor was largely indebted, and we are aware of no rule under which it can be sustained." Where such a conveyance is "made in anticipation of becoming indebted, and for the purpose of defrauding creditors, and was made without consideration, it matters not whether the grantor was insolvent or not, the conveyance would be void against such subsequent creditors." (*Morrill* v. *Kilner, supra; Moritz* v. *Hoffman, supra*).

It is, however, claimed by the appellants that, although the property here in question was conveyed to

Columbus B. Hauk on November 9, 1889, yet it was pur-
chased with Mrs. Hauk's money, or with money owned
jointly by Hauk and his wife.  The theory of the appel-
lants is, that Hauk held the title in trust for his wife, and
when he made the conveyance afterwards on January 13,
1891, he only conveyed to her property, which actually
belonged to her.  In support of the contention thus made
by the appellants, proof was introduced showing that in
1858 Mrs. Hauk's father died testate, and devised to her
by his will two lots in Cincinnati, Ohio.  Under the law
in the State of Ohio prior to 1861, as appears from the
statutes of that State introduced in evidence, Hauk, by
virtue of his marriage, had a freehold estate in the land
of his wife, and was entitled to the possession and to the
rents, issues and profits thereof.  The lots, thus devised
to Mrs. Hauk by her father, were sold in 1864 and 1865 by
her husband.  He received the money realized from the
sale, and subsequently invested it with moneys of his
own in a farm, but the title to the farm was taken in
his own name.  It is not denied that this was done with
Mrs. Hauk's consent.  Subsequently, the farm was sold,
and the proceeds were invested in other real property.
The property thus purchased was also sold.  When these
purchases were made, the title was always taken in the
name of Hauk, the husband, with the consent of the wife,
and he received and took possession of the proceeds of
the sales.  Upon the making of the last sale, he loaned
out the proceeds thereof upon bond and mortgage.  He
says that he engaged in the business of lending money,
and taking notes and mortgages therefor for more than
twenty-five years.  The investments were always made
by himself in his own name, and the notes and mort-
gages were always taken payable to himself, and not to
his wife.  As is said by the Appellate Court in deciding
this case, "it does not appear that up to the time of
the transfer of the Washington avenue (or Hyde Park)

property by Mr. Hauk to his wife, any of the proceeds, in whole or in part, of the money, which originally belonged to her, was ever taken or held otherwise than in the name of Columbus B. Hauk."

There is no evidence, so far as we can discover, what proportion of the funds, invested in the business of lending money upon notes and mortgages, belonged to Mrs. Hauk, and what proportion thereof belonged to Mr. Hauk, if the latter did not own all the money so invested. The last sale of property, claimed to have been purchased by Hauk with his own and his wife's money, was made in 1882, and if any of the proceeds of that sale belonged to her, it is impossible to tell how much she owned, if she had any ownership therein.

During the time when the purchases and sales of real estate were thus made by Hauk, he never gave his wife any note as evidence of his indebtedness to her. During this time, a period of more than twenty-five years, she never demanded any interest of him, nor asked any settlement of him, nor made any claim of indebtedness against him, until the time of the bringing of this suit. No account was kept either by her or by him. In 1864 and 1865 her money was put into a common fund with his, and he used it in his business as money lender, if not in his business as merchant, making all investments, and taking all titles in his own name. He used this money also in support of his family, and to defray the expenses of living. Under this state of facts, the evidence does not satisfy us that Columbus B. Hauk acted as agent for his wife in investing her money, or that he owed her any money on January 13, 1891. It is true that a husband may act as agent for his wife in investing and taking care of her funds, but the circumstances must show that they recognize the relation of principal and agent as existing between themselves. Here, there was not only no express agreement between them, by the terms of which he was to act as her agent, but no circumstances are

shown, indicating the existence of any such relation as that of principal and agent between her and him.

In *Hughes* v. *Noyes*, 171 Ill. 575, we said (p. 583): "The law is well settled that a wife may loan her separate property to her husband, and he can give her security, which will be binding against both prior and subsequent creditors; but the law is equally well established that the mere fact of the wife letting the husband have her money to use is not sufficient as against other creditors. The actual contractual relations must appear by satisfactory evidence. (*Iseninger* v. *Criswell*, 67 N. W. Rep. 290; *Ronans* v. *Maddow*, 77 Iowa, 206). When the rights of creditors are involved, the law will not, from mere delivery by her of money to him, imply a promise to re-pay her, but will require more,—either an express promise, or circumstances to prove that in such matter the husband and wife dealt with each other as debtor and creditor. (*Steadman* v. *Wilbur*, 7 R. I. 481). 'A claim by a wife against a husband, first put in writing when his liabilities begin to jeopardize his future, should always be regarded with watchful suspicion, and when attempted to be asserted against creditors upon the evidence of the parties alone, uncorroborated by other proof, should be rejected at once, unless their statements are so full and convincing, as to make the fairness and justness of the claim manifest.' *Clark* v. *Rosenbraus*, 31 N. J. Eq. 667."

In *Frank* v. *King*, 121 Ill. 250, it appeared that a person exchanged a tract of land, belonging to his wife, of the value of $1000.00 for other lands, taking the title to the latter in his own name by her consent, and giving no obligation to pay her anything, and he afterwards sold the land thus acquired for $1600.00, and used the money and $200.00 more of his own in the purchase of another tract, and some twelve years after exchanging his wife's land, and while largely indebted and insolvent, conveyed the tract last acquired to his wife through a trustee; and it was there held that the conveyance to the wife could not

be held good as against the husband's creditors; and it
was also there held that, when a husband undertakes to
prefer his wife to the exclusion of other creditors, the
proof should be clear and satisfactory that she has a
valid, subsisting debt, which is to be enforced and pay-
ment exacted regardless of the husband's fortune or mis-
fortune.   In the latter case it was said (p. 254): "The
claim is, that the husband became indebted to the wife
in the sum of $1000 in 1873. . No note was ever given for
the alleged indebtedness, nor was any interest ever paid
on the debt, nor was it treated as a valid indebtedness,
until King was in the act of failing.   *   *   *   A party,
who has a valid claim against another, does not, as a
general rule, suffer the claim to stand for a period of
twelve years without even taking a note, without calling
for interest, and without security, doing nothing what-
ever to collect or secure the claim. Such is not the man-
ner in which business is done where a valid, *bona fide* debt
is in existence." In the case at bar, whatever claim Mrs.
Hauk may have had against her husband arose in 1864
and 1865, and it was suffered to stand, not for a period of
twelve years, but for a period of more than twenty-five
years without notes, interest or security, or effort to col-
lect or secure the same.   (See, also, to the same effect
*Phillips* v. *Kesterson*, 154 Ill. 572; *Dillman* v. *Nadelhoffer*, 162
id. 625; *Smith* v. *Willard*, 174 id. 538).

The case of *Hockett* v. *Bailey*, 86 Ill. 74, is quite similar
in its facts to the case at bar.   In that case, a wife, mar-
ried in Ohio in 1858, received money from her father's
estate, with which she allowed her husband to purchase
real estate in his own name, and which he several times
traded for other property, taking title in his own name,
and finally acquired land in his own name in this State,
which he exchanged for another tract, and procured the
conveyance to be made to his wife, he working on the
lands as his own, and increasing the capital; and it was
there held that the proceeds of the sale of the last named

tract were subject to the payment of the husband's debts, it not appearing that he kept sufficient property to pay his indebtedness; and it was there further held that, if a wife allows her husband to use her capital as his own, to invest and re-invest the same in his own name, and thereby obtain credit on the faith of his being the owner of the same, she will not be allowed to interpose her claim to the property, so acquired, to the injury of her husband's creditors. It is true, as was said by this court in *Jackson* v. *Kraft*, 186 Ill. 623, that "where a husband receives the capital fund of his wife's property, there is no presumption that she intended to give it to him," but proof may be introduced for the purpose of showing that there was a gift rather than a loan to the husband. Where the husband uses the property in his business, or for the support of the family, with her knowledge or assent, a gift may be inferred in the absence of a contrary agreement. (*Reed* v. *Reed*, 135 Ill. 482; *Hughes* v. *Noyes*, 171 id. 575; *Briggs* v. *Mitchell*, 60 Barb. 317).

In *Hockett* v. *Bailey*, *supra*, it was said by this court (p. 77): "If it had been the intention and purpose of the wife to retain the money derived from her father's estate as her own separate property, free from her husband, when the land was bought it should have been purchased in her own name, or at least some plan should have been adopted, by which the public would have had notice that the property purchased belonged to her, and not to her husband."

In *Wortman* v. *Price*, 47 Ill. 22, it was held that where the wife advances capital to her husband with which to engage in trade, such capital and its fruits in the business will be subject to the debts of the husband.

It is to be noted in reference to the cases upon this subject that, where there is a controversy between the husband and wife as to the ownership of the property, the right of the wife to recover will be more readily maintained than where the rights of creditors of the husband

196—3

intervene. In the latter case an altogether different question arises. (*Hockett* v. *Bailey, supra; Smith* v. *Willard,* 174 Ill. 538).

Where the controversy is between the husband and the judgment creditor, it is a material circumstance, if the wife has permitted the husband to hold himself out as the owner of the property, and thereby gained credit on the strength of such ownership. Wait on Fraudulent Conveyances and Creditors' Bills, (2d ed. sec. 305,) says: "If a wife permits her husband to take title to her lands and to hold himself out to the world as the owner of them, and to contract debts upon the credit of such ownership, she cannot afterward, by taking title to herself, withdraw them from the reach of his creditors, and thus defeat their claims." (*Tomlinson* v. *Matthews,* 98 Ill. 178; *Morrill* v. *Kilner,* 113 id. 318; *Smith* v. *Willard,* 174 id. 538.)

In the case at bar, the evidence shows that the firm of Bruce, Hauk & Co. on July 1, 1887, made a statement to the present appellees as to the financial condition of ·the firm and its members, evidently for the purpose of obtaining credit, or maintaining their credit, with the appellees. In this statement it was said that C. B. Hauk, the senior member, owned real estate to the amount of $30,000.00, and had money loaned out upon first mortgages to the amount of $15,000.00. Without attempting to discuss or analyze the evidence, it is clear that Hauk could not, at that time, have had real estate to the amount of $30,000.00 and money loaned out to the amount of $15,000.00, without including the real estate now claimed to have been owned in part or in whole at that time by his wife. This statement represented C. B. Hauk to be the owner of what is now claimed to have been owned by his wife, or by his wife and himself jointly. Again, on the 25th of February, 1890, the same firm wrote a letter to the appellees, referring to and indorsing the previous statement, and containing the following words: "Now the assets are just the same, if anything better, as father

made about $2000 last year on some real estate sold, or traded for rather, and Mr. Bruce is just the same. You have account of C. B. Hauk's (father's) property, and R. B. Bruce, hence I will not go into detail." This letter was signed in the firm name of Bruce, Hauk & Co., although written by H. S. Hauk, the son of C. B. Hauk, and his representative in the firm. So far as this record shows, the real estate, on which C. B. Hauk is therein stated to have made $2000.00 in 1889, could have referred only to the Hyde Park lot here in controversy. In that letter it is spoken of as belonging to Mr. Hauk, and not Mrs. Hauk. Again, in a letter written on December 7, 1890, by the firm of Bruce, Hauk & Co. to the appellees, it is said: "During the past year my father has put up a house and bought other property there, (in Chicago) and in course of another year will be there himself." This letter refers to the intention of the firm to remove from Springfield, Ohio, to Chicago, and the reference in the letter, embodied in the above quotation, can refer to nothing else than the house and lot here in controversy, and such house and lot are there spoken of as belonging to C. B. Hauk. It is not denied that, when the letter of February 25, 1890, was written, the title to the Hyde Park lot stood of record in C. B. Hauk, and there is no evidence tending to show that appellees were ignorant of that fact. But whether they did, or did not, have knowledge that the title to the Hyde Park lot then stood in C. B. Hauk, they relied upon the written statement, made to them as to the ownership by C. B. Hauk of the property, the proceeds of the sales of which are now alleged to have belonged to Mrs. Hauk, and to have been used in the purchase of the Hyde Park lot. By permitting her husband to hold the title to the property, knowing that he was engaged in mercantile business and in the constant purchase of goods to carry on that business, she consented that he might obtain credit upon the strength of his apparent ownership as it appeared of record.

Cases are referred to by counsel, for the purpose of showing that there was an indebtedness existing from Mrs. Hauk to Mr. Hauk, which hold that, where a married woman places her money in the hands of her husband to be invested by him in her name and for her benefit, the property bought with such money will be held to belong to her, as against his creditors. But the case at bar is not such a case. Here, she gave him her money, and permitted him to invest it in his own name and for his own benefit. It is well settled that, where a married woman obtains money either by borrowing or inheriting it, or as a devisee, and places it in the hands of her husband to be invested by him in his name for his benefit, the property bought with such money, as to creditors, will belong to the husband, and be liable to be seized for his debts. (*Nelson* v. *Smith*, 64 Ill. 394; *Hockett* v. *Bailey, supra; Lowentrout* v. *Campbell*, 130 Ill. 503; *Reed* v. *Reed*, 135 id. 482; *Dillman* v. *Nadelhoffer*, 162 id. 625; *Keady* v. *White*, 168 id. 76; *Smith* v. *Willard*, 174 id. 538; *Iseninger* v. *Criswell*, 98 Iowa, 383; *Porter* v. *Goble & Co.* 88 id. 565; *Ronans* v. *Maddows*, 77 id. 206; Wait on Fraudulent Con. sec. 305; *Township of Maple Valley* v. *Foley*, 113 Mich. 622).

It is furthermore claimed by the appellants, that the only witnesses upon the material issues involved in this case, besides Harry S. Hauk, the son of C. B. Hauk, are Mr. and Mrs. Hauk themselves, and that, as they swore that they had no intention by the execution and acceptance of the deed of January 13, 1891, to hinder, delay or defraud their creditors, the appellees are bound by their testimony upon this subject, and estopped from contradicting it. Where there is a general denial of fraud or ownership by witnesses, such denial is of little effect, if the facts and circumstances narrated by the witnesses disclose the contrary. For example, if a man swears that he had no intent to defraud his creditors by a conveyance, but the facts testified to by him show that the conveyance was a voluntary conveyance to his wife without

consideration, while he was insolvent, or largely indebted, or on the eve of insolvency, such facts so testified to by him will stamp the conveyance as fraudulent, even though he may have had no actual intention to defraud. In *Phillips* v. *Kesterson, supra,* we said: "Conveyances may be held fraudulent as to creditors on two distinct grounds: First, where entered into with a fraudulent intent; and second, where the law will infer fraud from the nature of the transaction, regardless of the motives of the parties. * * * The testimony of the parties to the transaction that there was no fraudulent intent, and the conveyances were made in good faith, cannot prevail against facts and circumstances, which satisfactorily show the conveyances were fraudulent as to creditors." So, also, in *Bell* v. *Devore,* 96 Ill. 217, it is said (p. 223): "It is testified that the conveyances were made and the whole transaction had in good faith and without fraudulent intent, and it is insisted that this is controlling in the case. Where the facts and circumstances show a transaction to be fraudulent, as against creditors, declarations under oath, that it was in good faith and without fraudulent intent, avail but little. * * * The opposing evidence in the case of good faith, and that there was no fraudulent intent, cannot prevail against the facts and circumstances, which show satisfactorily that the conveyances were fraudulent as against creditors." It has been held, that "the denial of fraud in an answer under oath is not conclusive on the court, if the facts and circumstances of the case are such as irresistibly to lead the mind to a different conclusion." (*How* v. *Camp,* Walk.—Mich.—427; *Morris, etc. Railroad Co.* v. *Blair,* 9 N. J. Eq. 635). "A denial by the answer of the existence of fraud will not avail to disprove it, where the answer admits facts, from which fraud follows as a natural and legal, if not a necessary and unavoidable, conclusion." (*Sayre* v. *Fredericks,* 16 N. J. Eq. 205; *Hoboken Savings Bank* v. *Becham,* 33 N. J. Eq. 53; 1 Ency. of Pl.

& Pr. p. 942). So, in the case at bar, although the appellants may have sworn in good faith to the absence of an intent on their part to commit fraud, yet we are of the opinion that the facts, conceded by defendants to exist, and testified to by themselves, constitute what is known as fraud in law as against the appellee creditors.

Appellants further make complaint, that the court allowed the bill to be amended by alleging that the debt, upon which the judgment was rendered on October 2, 1891, was contracted between July 5, 1890, and November 13, 1890, and therefore before January 13, 1891, when the deed here in controversy was made. It is claimed that by this amendment a new cause of action was set up in the bill. As we read the record, the appellants consented that the amendment should be made, and failed to demur to the original bill on account of its omission therefrom. By the failure so to demur the defect, created by its omission from the original bill, if it was a defect, was waived. (*Gage* v. *Schmidt*, 104 Ill. 106; *Monson* v. *Kill*, 144 id. 248). The original bill alleged facts, showing that appellees were creditors of C. B. Hauk, without fixing the time when they first became creditors; and the amendment merely fixed that time and alleged that fact, but it thereby introduced no new cause of action. (*Chicago City Railway Co.* v. *Hackendahl*, 188 Ill. 300). We agree with the Appellate Court in the following statement made by them upon this subject in their opinion: "This amendment introduced no new cause of action. It was but a mere enlargement of the previous allegations that they had obtained judgment against him (Hauk), and had execution issued thereon, and returned 'no property found.'" (*Morrill* v. *Kilner, supra*).

Even if it should be conceded that Columbus B. Hauk, in respect to the property which his wife obtained from her father's estate, occupied the position of a trustee as to the same, he mingled her funds with his own with her knowledge and consent, so that her property could

not be separated from his. Hence, as between herself and other creditors, even if he is to be considered as a trustee for her, her position is only that of a general creditor, as the identity of her money, as against creditors, has been lost by the mixture of the funds. "Where a trustee has converted a trust fund into money, and mingled it with his other moneys, so that it cannot be separated from the latter, the beneficial owner occupies the position of a general creditor of the estate, and can not follow the fund into the hands of an assignee for the benefit of creditors. * * * Its identification is a prerequisite to the exercise of the right to follow it." (*Wetherell* v. *O'Brien*, 140 Ill. 146). Such evidence, as tends to show that the original purchase of real estate was made jointly with funds, received by Mrs. Hauk from her father's estate, and with other funds belonging to her husband, establishes the ratio of their contributions to be one-third for her and two-thirds for him. In other words, wherever land was bought with their joint moneys, the proof shows that the proportion of such moneys belonging to her was one-third, and to him, two-thirds. Even, therefore, if the evidence showed—which it does not show—that this proportion or ratio was followed out and observed in all the investments made by Mr. Hauk, two-thirds of the lot here in controversy would be his property, and only one-third thereof would belong to her. The Hyde Park lot and the improvements upon it cost $10,000.00, and the proof tends to show that they are worth that amount at the present time, if not more. Upon this theory, the interest of C. B. Hauk in the house would be two-thirds of $10,000.00, or $6666.66. The latter amount is more than sufficient to pay the judgment in favor of the appellees. Therefore, the decree is not erroneous in directing a sale of the premises.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*